**IN THE UNTIED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

CHARLES R. SIMONS and BETH SIMONS, (H/W)
Plaintiff
vs. Case No. 1:21-cv-05575-RMB-MJS

WELLS FARGO BANK, N.A. And SPECIALIZED LOAN SERVICING, LLC

Defendants FIRST AMENDED COMPLAINT

Plaintiffs, Charles R Simons and Beth Simons, husband and wife, by way of Complaint against the defendant, Wells Fargo & Company, Inc., does hereby say as follows:

## PARTIES

1. Plaintiffs are husband and wife, and the co-owners and mortgagors of certain real estate known as 302 North Jerome Avenue, Margate, City, Atlantic County, New Jersey, 08402, also known as Lot 2 in Block 512.02 (the "Property").

2. Defendant Wells Fargo Bank N.A. (previously impleaded as Wells Fargo & Company) (hereinafter "Wells Fargo"), is a Delaware Corporation with offices located at 420 Montgomery Street, San Francisco California, 94104 which is licensed in New Jersey as a mortgage company and which operating branches and conducts consumer banking throughout the United States and within the State of New Jersey.

3. Defendant Specialized Loan Servicing, LLC ("SLS"), is a mortgage servicing company which serviced the loan which is the subject of this Complaint, and which is or

was at all relevant times headquartered at 6200 South Quebec Street, Greenwood Village, Colorado, 80111.

## FACTS COMMON TO ALL CONTS

4. SLS was or acted as assignee of defendant WFC with respect to the mortgage loan described herein, to wit, a certain note and mortgage given by plaintiffs in favor of Wells Fargo, having loan number 0313660888.

5. In or about October of 2012, Plaintiffs' Property (their personal and primary residence) was severely damaged, along with many other homes that suffered damage as a result of the high winds and torrential rain that swept the area during Hurricane Sandy.

6. In fact, in the aftermath of Hurricane Sandy, both Federal and State agencies declared Atlantic County, New Jersey a disaster area, which qualified it for special funding, recovery grants and Federal and State monetary and logistical aid.

7. Among those programs, during the summer of 2013, New Jersey initiated the Reconstruction Rehabilitation Elevation and Mitigation program ("RREM").

8. For its RREM program, the State allocated $1.34 billion in federal funds to help eligible homeowners repair or rebuild their Superstorm Sandy-impacted homes. The RREM Program provided grant awards to the primary residences of homeowners for activities necessary to restore their storm-damaged homes, including reconstruction, rehabilitation, elevation and/or other mitigation activities.

9. The RREM Program also provided eligible homeowners with grant awards up to $150,000.in order to "fill the gap" between the costs of repairs and other funds the owner may have received to repair their properties, including amounts the homeowner may have

received for home repairs from other sources such as insurance, FEMA, SBA, and non-profit organizations.

10. Among other provisions, in or about 2017 New Jersey legislature enacted bipartisan legislation (N.J.S.A. 52:15D-13 et seq.) that implemented a forbearance program which permitted affected homeowners to forestall or suspend their mortgage payments, interest and late fees during the rebuild phase, without the consequence of a breach of default of their mortgage loans, without fear of foreclosure proceedings, and without the possibility of adverse credit entries or repayment histories, to wit: mortgage lenders could not report such loans of participating homeowners as delinquent to credit bureaus, credit agencies, other lending institutions, and the like.

11. in June of 2019, the foreclosure protection and mortgage relief programs were extended until July 1, 2022 ("NJ5096"), or for one year following the issuance of a certificate of occupancy.

12. Plaintiffs qualified for the State reliefs set forth above and were the grantees of a Hurricane Sandy RREM State grant, Certificate # RRE0007936, dated January 29, 2014.

13. They also qualified for the New Jersey Forbearance Program and were issued a "Certificate of Eligibility" from the Commissioner of the State of New Jersey Division of Consumer Affairs ("DCA Certificate"). on or about April 17, 2017, a copy of which is attached as **Exhibit "A"**.

14. The DCA Certificate correctly identified Wells Fargo as the plaintiff's mortgage lender.

15. As required by the terms of the Forbearance Program, plaintiff's timely paid all taxes and other escrows to Wells Fargo required to maintain their Property and their mortgage loan (see schedule, attached as **Exhibit "B"**), but they were relieved from paying their mortgage payments as permitted by the aforementioned legislation and DCA Certificate, a copy of which was also sent to Wells Fargo.

16. Moreover, plaintiffs, who own and operate several successful business enterprises in their local community and nationally, are financially savvy and experienced individuals, and they were meticulous with their personal finances. Plaintiffs worked diligently over the past forty (40) years to maintain the timely status of their financial obligations. As a result, the plaintiffs established a highly favorable credit score and credit/repayment history prior to receiving the DCA Certificate of Forbearance.

17. To that end, in June of 2017, Wells Fargo acknowledged in writing (**Exhibit "C"**) that it understood plaintiffs were participants in the New Jersey Forbearance Program, and that it received plaintiff's payment of taxes and insurance for escrow as of May 1, 2017.

18. In the aforementioned letter, Wells Fargo clearly confirmed and acknowledged that "[w]e know this may be a difficult time and it may help you to know that we won't report negative credit impacts of the forbearance during the program."

19. Even without the letter, under the aforementioned Forbearance Program and State laws, Wells Fargo would have been legally prohibited from sending negative reports to credit agencies for any mortgagee participating in the program, as the plaintiffs.

20. Thereafter, in December of 2018, Wells Fargo notified plaintiffs that it would be transferred the servicing of plaintiff's mortgage loan and note to defendant Specialized Loan Servicing, LLC. As of January of 2019. **Exhibit "D"**

21. Notwithstanding the foregoing, starting in May of 2017 and continuing during the forbearance period, defendants Wells Fargo and/or SLS reported plaintiffs' mortgage loan as "120 days delinquent" or "serious delinquency" to at least two (2) of the credit bureau agencies, Trans Union and Equifax, with reporting dates to those agencies as recent as January and February of 2019. See credit report, **Exhibit "E"**

22. Alternatively, Wells Fargo and/or SLS knowingly failed to report information during the forbearance that the loan was in good standing.

23. Sometime in September of October of 2019, plaintiffs determined to expand their business enterprise, sought mortgage financing for a proposed multi-million dollar expansion and relocation.

24. As a result of the negative credit reports from both Wells Fargo and SLS, the plaintiffs were denied loans by one or more conventional lenders, including from Crown Mortgage, which unequivocally told plaintiffs they were denied because of the adverse Wells Fargo repayment information. **Exhibit "F"**

25. In order to remedy these adverse credit entries, plaintiffs contacted Wells Fargo and demanded that they remedy or remove the events of adverse reporting form their credit history with the major credit bureaus.

26. In September of 2019, Wells Fargo responded in writing, noting that it reviewed its records and stood by its previous reporting about plaintiffs' mortgage loan as factually accurate. **Exhibit "G"**

27. At the same time, plaintiff contacted the various credit reporting agencies that had negative reports on the loan to inform them that they had published erroneous information and to dispute those adverse entries vis-a-vis their mortgage loan.

28. The credit agencies also refused to address or remedy the issue, directing plaintiffs to take up their grievances with Wells Fargo and its servicing company.

29. In October of 2019, plaintiffs contacted Universal Credit Services, LLC ("UCS") the company that processed the credit information from both Wells Fargo and SLS to investigate and dispute the negative entries.

30. UCS was able to convince both Experian and Equifax to remove all negative entries on plaintiffs' credit history related to the mortgage.

31. In October of 2019, UCS informed plaintiffs that Trans Union would only remove the negative history and entries at the request of Wells Fargo. See email **Exhibit "H"**

32. In November of 2019, Wells Fargo sent plaintiff a letter summarizing its position and the previous efforts by plaintiff to resolve the negative credit entries. **Exhibit "I"**

33. To date, Wells Fargo has steadfastly refused to request removal of the adverse entries, whether to Trans Union or any of the other credit agencies.

34. Among other debts, plaintiffs would have otherwise received more favorable terms on several loans, including, but not limited to a high-interest loan plaintiffs were forced to take a high interest loan with Mulligan Funding on July 24, 2019 in the amount

of $140,000 of which plaintiffs only received $111,000 ($30,000 was paid as "upfront interest" payable at a rate of $2,900 a week) so they could retire certain outstanding obligations and so they could ultimately quality for SBA funding for a new property to house plaintiffs' various business enterprises under one roof.

35. Plaintiffs suffered economic loss as a direct and proximate result of Wells Fargo's and SLS's reports to the credit bureaus and failing to abide by its legal obligations and its own representation to the plaintiffs with respect to the absence of any adverse reporting during their forbearance period, in the amount of at least the following:

a) $475 for an appraisal;
b) $31,000 in frontloaded interest
c) amounts to be determined related to plaintiffs' trade credit and other creditworthiness
d) counsel fees, experts' fees and costs of suit;
e) such other damages as are in accordance with the laws of the State of New Jersey

36. As a direct and proximate result of Wells Fargo and its servicing agent's breaches of the Forbearance Program, New Jersey State Law and of its own misrepresentations to plaintiffs upon which they directly relied, the plaintiffs were caused to suffer immediate losses to their reputations, loss of their creditworthiness, loss of economic opportunities, loss of business reputations and were forced to expend moneys for counsel fees, costs, expert fees, as well as the loss of ability to expand and finance their business operations and personal needs at a merit based rate of interest and on less than ideal terms, and are suffering, and will continue to experience economic hardships, economic losses and further losses of opportunity, all as a direct and proximate result of their inability to

obtain favorable credit terms, loans or other trade credit involved in their business and personal interests.

**COUNT ONE**
**(Breach of Contract)**

37. Plaintiffs repeat and reallege each of the preceding paragraphs as if same were more fully set forth at length herein.

38. Plaintiffs and defendant Wells Fargo (and SLS as its assignee) were parties to and bound by a series of contracts, to wit, a mortgage and note, as assigned, between Wells Fargo and plaintiffs.

39. As part of those agreements, Wells Fargo and SLS owed plaintiff an obligation of good faith and fair dealing.

40. Moreover, the agreements specifically required that Wells Fargo provide truthful and accurate information to any reporting agencies or credit bureaus.

41. Sometime after the mortgage aforesaid was issued to plaintiffs, Wells Fargo further represented and warranted as a material provision that it would refrain from reporting adverse or negative credit information or payment history information to the various credit bureaus during the plaintiffs' forbearance.

42. Moreover, defendants were required by law to refrain from taking such adverse actions.

43. Defendants represented to and promised the plaintiffs, in writing, and intending plaintiffs to rely on those representations, that they should not fear any adverse credit reporting during the period of forbearance governed by the DCA Forbearance Certificate.

44. Defendants further breached the provisions of the aforementioned mortgage and note, as assigned by, i*inter* *alia*;

a) reporting incorrect information to the various credit reporting agencies;

b) misreporting correct information its was obligated to keep confidential vis-à-vis, the various credit reporting agencies and bureaus;

c) failing to correct such errors when notified and requested;

d) failing to correctly keep accurate internal records or design a system to protect its customers participating in the New Jersey Forbearance Certificate Program in the aftermath of Hurricane Sandy.

e) failing to abide by New Jersey laws enacted to protect homeowners and required by mortgage lenders servicing loans throughout the State of New Jersey in the aftermath of Hurricane Sandy;

f) misrepresenting to plaintiffs that they could and had the right to forbear from paying their ongoing mortgage payments (but not taxes and insurance) without adverse consequence during the forbearance period.

g) such other breaches of the provisions of the various agreements between the parties as the law and facts may reveal.

45. As a direct and proximate result of the foregoing breaches by defendants, the plaintiffs have been caused to suffer damages, including economic loss and loss of business and economic opportunity.

**WHEREFORE,** plaintiffs demand judgment against the defendants for damages, both economic and otherwise, as well as compensatory and punitive and as may otherwise be appropriate in accordance with and under the laws of the State of New Jersey.

**COUNT TWO**
**(Violations of N.J.S.A 56:11-28)**

46. Plaintiffs repeat and reallege each of the preceding paragraphs as if same were more fully set forth at length herein.

47. The conduct of the defendants, as aforesaid, was in direct violation of N.J.S.A. 56:11-28, New Jersey's Fair Credit Reporting Act.

48. The conduct of the defendants was particularly egregious in light of the fact it misreported and incorrect reported, as well as providing incorrect and inaccurate information to the various credit reporting agencies in violation of the New Jersey forbearance act as aforesaid.

49. Even worse, defendants induced the plaintiffs in writing, into believing they could follow the law in New Jersey and forbear their mortgage payments during the forbearance period based on their participation in the programs as aforesaid, without adverse consequence – representations upon which plaintiff directly relied to their detriment and loss.

50. Defendants' conduct as aforesaid violated N.J.S.A. 56:11-30 et seq, causing plaintiffs to suffer both nominal, consequential and economic loss.

51. As a direct and proximate result of same, plaintiffs have been caused to suffer damages.

**WHEREFORE,** plaintiffs demand judgment against the defendants for damages, both economic and otherwise, as well as compensatory and punitive, and as may otherwise be appropriate in accordance with and under the laws of the State of New Jersey.

**COUNT THREE**

**Detrimental Reliance**

52. Plaintiffs repeat and reallege each of the preceding paragraphs as if same were more fully set forth at length herein.

53. Defendants Wells Fargo and SLS made representations to plaintiffs upon which it expected and anticipated plaintiffs would rely.

54. To wit: defendants represented to plaintiffs that they should confidently participate in a State approved, legislatively approved forbearance program without the need to worry about adverse credit reporting.

55. Plaintiffs did in fact rely to their detriment on the representations and promises of the defendants, to wit: that no adverse or negative credit history would be reported on the mortgage during the forbearance period.

56. Despite the representations and promises made directly by defendants upon which they expected plaintiffs would rely, defendants breached those representations and promises and adversely reported the loan as delinquent and otherwise4 non com[lpiant.

57. As a direct and proximate result of the foregoing representations, plaintiffs relied to their detriment and were caused to suffer economic loss, loss of business opportunity and loss of their business reputations and creditworthiness.

**WHEREFORE,** plaintiffs demand judgment against the defendants for damages, both economic and otherwise, as well as compensatory and punitive and as may otherwise be appropriate in accordance with and under the laws of the State of New Jersey.

**COUNT FOUR**
**Violations of N.J.S.A. 52:15D-13 et seq.**

58. Plaintiffs repeat and reallege each of the preceding paragraphs as if same were more fully set forth at length herein.

59. As stated, the New Jersey legislature specifically provided a remedy by which homeowners affected by Hurricane Sandy would receive substantial relief if they participated in the Forbearance Program.

60. As a lender, licensed in the State of New Jersey, defendants Wells Fargo and SLS were obligated to adhere to New Jersey law with respect to the servicing of mortgage loans for New Jersey residents.

61. By its conduct as aforesaid, the defendants breached their duty under the aforesaid laws, causing plaintiffs to suffer damages including, but not limited to economic loss, loss of business and economic opportunity and loss of standing in the business community.

**WHEREFORE,** plaintiffs demand judgment against the defendants for damages, both economic and otherwise as well as compensatory and punitive, and pursuant to N.J.S.A. 52:15D-13 et seq and as may otherwise be appropriate in accordance with and under the laws of the State of New Jersey.

**COUNT FIVE**
**(Negligence)**

62. Plaintiffs repeat and reallege each of the preceding paragraphs as if same were more fully set forth at length herein.

63. Defendants, by and through their conduct as aforesaid, acted negligently in the servicing and administration of the plaintiffs' mortgage and mortgage note.

64. As a direct and proximate result of the defendants' breach of the applicable duty of care, plaintiffs were caused to suffer damages, including, but not limited to economic loss, loss of business and economic opportunity and loss of standing in the business community as well as other damages.

**WHEREFORE,** plaintiffs demand judgment against the defendants for damages, whether economic, compensatory and punitive, and otherwise for the negligent conduct of the defendants and as may otherwise be appropriate in accordance with and under the laws of the State of New Jersey.

**COUNT SIX**
**(Fair Credit Reporting Act, 15 U.S.C. § 1681 )**

65. Plaintiffs repeat and reallege each of the preceding paragraphs as if same were more fully set forth at length herein.

66. As noted, despite an obligation not to report the loan as delinquent as a result of the New Jersey Hurricane Sandy forbearance program, Wells Fargo nevertheless reported their loan as delinquent, and at times the various credit bureaus reported the loan as both "delinquent" and eventually "seriously delinquent".

67. Plaintiffs communicated several times with Wells Fargo, which initially refused to correct the loan reporting error/

68. Plaintiffs also timely communicated with and notified the various credit reporting agencies to inform them of the error and demand a correction of their records, and they alerted the reporting agencies of their dispute of the erroneous information.

69. Upon information and belief, the various credit reporting agencies that Plaintiffs notified alerted both defendants of the Plaintiffs' claims and their dispute.

70. Wells Fargo and/or SLS (one or both) failed to diligently and timely investigate the veracity of Plaintiffs' claims nor undertake a reasonable investigation, employ reasonable procedures and correct the inaccuracy within a reasonable time of receipt of notice Plaintiffs' allegations, all of which both proximately and directly caused economic loss to the Plaintiffs, and all in violation of 15 U.S.C. § 1681 et seq.

71. As a direct and proximate result of the defendants' unreasonable delay in both investigating and eventually remediating the inaccurate information, Plaintiffs, who maintained an excellent credit score prior to the inaccurate report, were forced to pay a "hard money" lender a font-loaded $38,000 in straight interest so they could retire outstanding debt and expand their business and real estate holdings after they were rejected for more conventional financing as a result of the inaccurate report.

**WHEREFORE,** plaintiffs demand judgment against the defendants for damages, whether economic, compensatory or punitive, and such as may be appropriate under 15 U.S.C. §1681 et seq .

**COUNT SEVEN**
**(Declaratory and Equitable Relief)**

72. Plaintiffs repeat and reallege each of the preceding paragraphs as if same were more fully set forth at length herein.

73. As a result of the foregoing conduct on the part of the defendants, plaintiffs are suffering and they continue to suffer irreparable injury, irreparable harm and irreparable loss to their reputation and economic status, and said injury is not adequately compensable adequately by an award of monetary damages.

74. Based on the foregoing conduct, plaintiffs are entitled to declaratory or injunctive relief including but not limited to the following relief:

A) a declaratory Order that plaintiffs paid their mortgage to Wells Fargo as agreed and on time;

B) an Order enjoining Wells Fargo from reporting negative information to the various credit reporting agencies related to plaintiffs' mortgage loan;

. C) an Order compelling defendants to correct the negative credit entries it reported to the various credit reporting bureaus, including but not limited to Trans Union;

D) an Order compelling defendants to ensure that plaintiffs' mortgage with Wells Fargo is reported to Trans Union and the other credit reporting bureaus as satisfied, in good standing and at all times current;

E) an Order compelling defendants to certify in writing to plaintiffs that their mortgage loan was at all times in good standing, that it was never delinquent and that it

was fully satisfied without negative activity, and that any report to the contrary is incorrect;

F) for such other relief as the Court deems equitable and just.

WHEREFORE, the plaintiffs demand Judgment for equitable, declaratory and injunctive relief as aforesaid, plus counsel fees and costs of suit.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury as to all issues so triable.

Dated: 5/5/2021

By: s/ David W. Sufrin______________________________

David W. Sufrin, Esq., 031281995
***ZUCKER STEINBEG & WIXTED, P.A.***
415 Federal Street
Camden, New Jersey 08103
(856) 365-0080
(856) 338-0217 (facsimile)
*Attorneys for Plaintiffs*